**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| LETORIA BUSH, | CIVIL ACTION |
| Plaintiff, | |
| v. | NO.: 2:26-cv-5476 |
| DOLLAR TREE STORES, INC., | |
| Defendant. | **JURY TRIAL DEMANDED** |
|  | *ELECTRONICALLY FILED* |

**COMPLAINT**

Plaintiff, LETORIA BUSH, by and through her attorneys, Weisberg Cummings, P.C., brings this civil action for damages against the above-named Defendant, DOLLAR TREE STORES, INC, demands a trial by jury, and complains and alleges as follows:

**JURISDICTION AND VENUE**

1.      This Complaint alleges unlawful racial discrimination within the workplace, as well as retaliation for engaging in the protected activity of reporting racial discrimination, all in violation of the laws and statutes of the United States of America, specifically, Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq*.; Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981").

2.      Jurisdiction over this Complaint is based upon federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

**THE PARTIES**

4.    Plaintiff, Letoria Bush ("Plaintiff"), a female adult, African American individual residing in Philadelphia County, Pennsylvania.

5.    Defendant, Dollar Tree Stores, Inc. ("Defendant"), is a Virginia corporation with a business address of 500 Volvo Parkway, Chesapeake, Virginia.

6.    At all times relevant and material hereto, Defendant operated a retail store located at 327 North Chester Pike, Glenolden, Delaware County, Pennsylvania, and employed in excess of twenty (20) people.

7.    At all times relevant and material hereto, Defendant was an employer pursuant to Title VII and Section 1981.

**ADMINISTRATIVE PROCEEDINGS**

8.    On or about April 27, 2026, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was docketed as EEOC Charge No. 530-2026-05979, alleging race-based discrimination and retaliation for reporting this discrimination to Defendant.

9.    Plaintiff has been advised of her right to sue in federal court, which notice was received on or about May 8, 2026.

10.    All necessary and appropriate administrative prerequisites to this action have occurred.[1]

---

[1] Plaintiff's claims for race discrimination and retaliation were "dual-filed" with the PHRC on or about April 27, 2026.  As such, Plaintiff intends to amend her Complaint to include these state claims once they become ripe, one year from their PHRC filing date.

**STATEMENT OF FACTS**

11.     Plaintiff was hired by Defendant on or about September 26, 2025, as an Assistant Manager.

12.     Throughout Plaintiff's tenure of employment with Defendant, she was a hard-working, dedicated employee.

13.     However, almost immediately after beginning her employment with Defendant, Plaintiff was subjected to a pervasive and systemic culture of racial harassment and discrimination, cultivated and maintained by her co-workers and supervisors, particularly her supervisor Barbara McClintock—a Caucasian woman.

14.     In fact, Ms. McClintock regularly made it clear that she preferred and favored Caucasian/White employees, evident by her frequent comments that she just wanted "all [her] people working here."

15.     Ms. McClintock's racial animus manifested itself in a racially hostile and discriminatory environment that forced Plaintiff to file several reports of workplace discrimination.

16.     Defendant's reporting policy requires that the first report of discrimination be submitted to its internal "Integrity Matters" line which is then forwarded to the District Manager and Human Resources ("HR").

17.     Plaintiff understood that her reports about Ms. McClintock's racially discriminatory behavior were not anonymous, but unfortunately after each report, she faced further retaliation and harassment, as Ms. McClintock would repeatedly threaten Plaintiff's job because of her reports.

18.    The first report Plaintiff made involved a workplace injury, where heavy boxes fell upon her because they were stacked too high. This injury caused her to be out of work for approximately two (2) weeks.

19.    Since Plaintiff had been injured at work, she filled out the necessary paperwork for her Workers' Compensation, as she had certain restrictions that were recommended by her doctor.

20.    When Plaintiff attempted to submit her Workers' Compensation paperwork, Ms. McClintock threw it into a desk drawer, disallowed any workplace restrictions to be implemented for Plaintiff, and never submitted Plaintiff's paperwork to the proper corporate channels.

21.    In essence, Ms. McClintock tried to have Plaintiff terminated, as she never submitted the documents to corporate and resultingly made it appear that Plaintiff called off work for the two (2) weeks in which she was recovering from the workplace injury with no record of such submitted to Defendant's corporate team.

22.    When Plaintiff returned to work, she attempted to remind Ms. McClintock of her workplace restrictions.  In a shocking response, Ms. McClintock called Plaintiff's doctors to say that she was lying and faking her injury.  Notably, Ms. McClintock did not do this for the Caucasian/White employees.

23.    All the while, a similarly situated Caucasian/White employee had a similar workplace injury, but Ms. McClintock permitted this Caucasian employee's restrictions and never threatened this other employee's job when she initiated the same requests.

24.    Subsequently, Plaintiff's Caucasian/White co-workers called the police on Plaintiff, identifying her as an "erratic black girl."

4

25. The police investigation, which involved eyewitness interviews and review of security footage, cleared Plaintiff of any wrongdoing and verified her account of the situation.

26. Thereafter, Plaintiff's Caucasian/White co-workers reported Plaintiff to Defendant's Loss Prevention unit, falsely accusing her of improperly exchanging headphones.

27. Defendant's Loss Prevention unit investigated the accusations against Plaintiff, reviewing security footage and interviewing witnesses, and verified Plaintiff's account of the situation.

28. Having been investigated twice by the police and Defendant's Loss Prevention unit, Plaintiff was cleared of any wrongdoing.

29. After these two false accusations, Plaintiff once again reported racial discrimination to HR, but HR never took any preventive steps to stop the hostile work environment.

30. Upon information and belief, these false accusations were manufactured, instigated, and/or supported by Ms. McClintock, who was seeking pretextual grounds to terminate Plaintiff on the basis of her race.

31. Throughout Plaintiff's tenure, she witnessed Ms. McClintock slowly try to replace all the African American workers with Caucasian/White employees.

32. At one point, Ms. McClintock hired a Merchandising Manager, who had both a lighter skin tone and a history of violent outbursts and poor work product.

33. In or about March 2026, Plaintiff asked this Merchandising Manager to lower boxes that had been stacked too high; in response, the manager exploded, screaming at Plaintiff while following her around the store and recording the outburst.

34. When Plaintiff contacted Ms. McClintock to notify her of the Merchandising Manager's outburst, Ms. McClintock simply responded that she "already knew what happened" and did nothing to intervene.

35. A week later, on or about March 19, 2026, Defendant suspended Plaintiff "until further investigation."

36. Then, on or about March 21, 2026, Plaintiff received a call from the District Manager, Alozo (LNU), and human resources representative, Nancy (LNU), who notified her that she was being terminated based on information supposedly obtained during the investigation.

37. It is clear that Plaintiff's termination by Defendant was the result of ongoing discrimination based on her race and color, and retaliation for the various good-faith reports she had made about this discrimination.

38. Accordingly, Defendant's failure to protect Plaintiff from the racially discriminatory, hostile work environment, as well as Defendant's decision to suspend and then terminate Plaintiff's employment for making numerous good-faith reports of this racially hostile work environment constituted violations of Title VII and Section 1981.

## COUNT I

### VIOLATIONS OF TITLE VII
#### *Race Discrimination*

39. All prior paragraphs are incorporated herein as if set forth fully below.

40. Defendant created, permitted, tolerated, encouraged, and fostered an environment in which Plaintiff was subjected to disparate treatment on the basis of her race, which environment was ongoing and pervasive throughout Plaintiff's tenure of employment.

41.    As a consequence of the racially disparate treatment, supported and encouraged by Defendant's actions and failures to act, Plaintiff was subjected to emotional distress, humiliation, ridicule, and a negative effect on her work product and ability to fully and effectively perform her job duties and responsibilities, all of which manifested itself in mental distress, injury, and damage.

42.    As a direct and proximate result of the racially disparate treatment, Plaintiff has suffered, and continues to suffer, emotional distress, a loss of self-respect and confidence, economic loss, and has been subjected to great damage to her career and professional standing.

43.    The actions of Defendant set forth above constitute violations of Title VII.

**WHEREFORE**, Plaintiff, Letoria Bush, seeks damages against Defendant, Dollar Tree Stores, Inc., as set forth in the *Ad Damnum* clause of the instant Complaint, *infra*.

<u>**COUNT II**</u>

**VIOLATION OF TITLE VII**
*Retaliation*

44.    All prior paragraphs are incorporated herein as if set forth fully below.

45.    As set forth above, Plaintiff engaged in protected activity, as defined by Title VII, by making several good-faith reports of racially hostile and discriminatory conduct to which she was subjected within the workplace.

46.    As a result of Plaintiff engaging in protected activity, Defendant acted by and through its agents, servants, and employees, to retaliate against Plaintiff by subjecting her to disparate treatment and later suspending and then terminating her as a result of reporting discrimination based upon her race.

7

47.     As a direct and proximate result of this retaliation, Plaintiff has suffered economic loss, emotional distress, and a loss of self-respect and confidence, and her standing in the community has been damaged.

48.     The actions of Defendant set forth above constitute violations of Title VII.

49.     Plaintiff has and continues to suffer irreparable harm as a result of Defendant's violation of her protected federal rights.

**WHEREFORE**, Plaintiff, Letoria Bush, seeks damages against Defendant, Dollar Tree Stores, Inc., as set forth in the *Ad Damnum* clause of the instant Complaint, *infra*.

<u>**COUNT III**</u>

**VIOLATION OF 42 U.S.C. § 1981**
*Race Discrimination*

50.     All prior paragraphs are incorporated herein as if set forth fully below.

51.     At all times relevant hereto, Plaintiff maintained or sought to maintain a contractual relationship with Defendant (i.e., an employment relationship).

52.     At all times relevant hereto, Defendant acted by and through its agents, servants, and employees, to intentionally discriminate against Plaintiff on the basis of her race and thereby deny her the benefits of the contractual relationship he had entered into with Defendant.

53.     As a consequence of Defendant's discriminatory actions and failures to act, Plaintiff was subjected to emotional distress, humiliation, ridicule, and a negative effect on her work product and ability to fully and effectively perform her job duties and responsibilities, all of which manifested itself in mental and physical distress, injury, and damage.

54. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered, and continues to suffer, economic loss, emotional distress, and a loss of self-respect and confidence, and she has been subjected to great damage to his career and professional standing.

55. The actions of Defendant set forth above constitute violations of Section 1981.

**WHEREFORE**, Plaintiff, Letoria Bush, seeks damages against Defendant, Dollar Tree Stores, Inc., as set forth in the *Ad Damnum* clause of the instant Complaint, *infra*.

<u>**COUNT IV**</u>

**VIOLATION OF 42 U.S.C. § 1981**
*Retaliation*

56. All prior paragraphs are incorporated herein as if set forth fully below.

57. At all times relevant hereto, Plaintiff sought to engage in a contractual relationship with Defendant.

58. At all times relevant hereto, Defendant acted by and through its agents, servants, and employees, to retaliate against Plaintiff by subjecting her to disparate treatment and later suspending her and then terminating her as a result of reporting discrimination based upon her race.

59. As a direct and proximate result of this retaliation, Plaintiff has suffered, and continues to suffer, economic loss, emotional distress, and a loss of self-respect and confidence, and her standing in the community has been damaged.

60. The actions of Defendant set forth above constitute violations of Plaintiff's federal civil rights under Section 1981.

**WHEREFORE**, Plaintiff, Letoria Bush, seeks damages against Defendant, Dollar Tree Stores, Inc., as set forth in the *Ad Damnum* clause of the instant Complaint, *infra*.

**AD DAMNUM CLAUSE/PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Letoria Bush, prays that this Honorable Court enters judgment in her favor and against Defendant, Dollar Tree Stores, Inc., and that it enters an Order as follows:

a. Defendant is to be permanently enjoined from discriminating or retaliating against Plaintiff on the basis of her race and/or any basis prohibited under applicable federal and state law;

b. Defendant is to be prohibited from continuing to maintain its illegal policy, practice, or custom of discriminating or retaliating against employees based on their race and is to be ordered to promulgate an effective policy against such discrimination and retaliation and to adhere thereto;

c. Defendant is to compensate Plaintiff, reimburse Plaintiff, and to make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority.  Plaintiff should be accorded those benefits illegally withheld from the date she first suffered discrimination at the hands of Defendant until the date of verdict;

d. Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused to her by Defendant's actions;

e. Plaintiff is to be awarded punitive damages as provided for under Section 1981 and Title VII;

f.     Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

g.     Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

h.     Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal and state law;

i.     Plaintiff is to be granted such additional injunctive or other relief as she may request during the pendency of this action in an effort to ensure Defendant does not engage - or ceases engaging - in illegal retaliation against Plaintiff or other witnesses to this action; and

j.     The Court is to maintain jurisdiction of this action after verdict to ensure compliance with its Orders therein.

## **DEMAND FOR JURY**

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, Plaintiff respectfully demands a trial by jury.

11

Respectfully submitted,

**WEISBERG CUMMINGS, P.C.**

Dated:  August 3, 2026          */s/ Derrek W. Cummings*
Derrek W. Cummings, Esquire
PA I.D. #: 83286
dcummings@weisbergcummings.com

*/s/ Larry A. Weisberg*
Larry A. Weisberg, Esquire
PA I.D. #: 83410
lweisberg@weisbergcummings.com

*/s/ Steve T. Mahan*
Steve T. Mahan, Esquire
PA I.D. #: 313550
smahan@weisbergcummings.com

*/s/ Michael J. Bradley*
Michael J. Bradley, Esquire
PA I.D. #: 329880
mbradley@weisbergcummings.com

2704 Commerce Drive, Suite B
Harrisburg, PA 17110-9380
(717) 238-5707
(717) 233-8133 (Fax)

*Counsel for Plaintiff*

12

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2026, a true and correct copy of the foregoing was filed electronically through the Court's CM/ECF system, and therefore, will be transmitted to all counsel of record by operation of the Court's CM/ECF system.

**WEISBERG CUMMINGS, P.C.**

Dated:  August 3, 2026

*/s/ Derrek W. Cummings*
Derrek W. Cummings